UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUZANNE WOLF, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-7084 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| RIVERPORT INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Suzanne Wolf suffered serious injuries in a car accident, leading to significant medical expenses. To make matters worse, the other driver did not have enough insurance to cover the costs of the crash. So Wolf brought an underinsured driver claim against Riverport Insurance Company, her employer's insurance company. She prevailed in arbitration and received an award of $905,000.

But Riverport did not pay the full $905,000. Instead, Riverport subtracted $250,000 that Wolf had received from two other insurance companies, and tendered a check for $655,000. At that point, Wolf believed that she was entitled to the full $905,000. So she filed a two-count complaint, bringing a breach-of-contract claim and a claim under the Illinois Insurance Code.

Wolf later came to see things differently. She dropped her challenge to the $250,000 offset. Wolf voluntarily dismissed the breach-of-contract claim, and tried to move forward with only the statutory claim.

That strategy posed a problem. A claim under section 155 of the Illinois Insurance Code can't stand on its own. That statute creates an extracontractual remedy when an insured prevails

on a claim under the policy. The statute does not create a one-legged stool. When Wolf dropped the breach-of-contract claim, the statutory claim didn't have a leg to stand on.

Riverport filed a motion for judgment on the pleadings, which this Court granted. But this Court also gave Wolf leave to amend. Wolf responded by filing a second amended complaint. She attempts to bring a breach-of-contract claim, apparently in the hope of finding a foothold for relief under section 155. And once again, Riverport filed a motion for judgment on the pleadings.

For the reasons stated below, this Court grants Riverport's motion for judgment on the pleadings.

## Background

Plaintiff Suzanne Wolf got in a car accident while on the job for the YMCA of Metropolitan Chicago. *See* Second Am. Cplt., at ¶¶ 1–2 (Dckt. No. 74). She was acting within the scope of her employment at the time of the crash.

Unfortunately for Wolf, the other driver didn't have enough insurance. Wolf had her own insurance policy, but that policy didn't cover the full costs of the accident, either.

Fortunately for Wolf, the YMCA had insurance. The YMCA had a commercial liability insurance policy from Riverport Insurance Company. *Id.* at ¶ 3. As a YMCA employee, Wolf was an "insured" under the policy. *Id.*

The policy included an "Illinois Underinsured Motorists Coverage" endorsement. *Id.* As the name suggests, the endorsement provides coverage when the other driver is underinsured. The basic idea is that the policy applies when the other driver has insurance, but doesn't have enough insurance to cover the costs of the accident.

After her accident, Wolf sent a letter to Riverport and asserted a claim under the Underinsured Motorists Coverage policy. *Id.* at ¶ 6. She demanded that Riverport tender the policy limit, which she thought was $900,000. *Id.* at ¶ 9.

Wolf also made a claim against the other driver, and the insurance company for the other driver paid Wolf the policy limit of $100,000. *Id.* at ¶ 10.

Two years passed without any movement by Riverport. *Id.* at ¶ 11. Riverport offered Wolf $100,000 to resolve her claim. *Id.* Wolf refused. *Id.* Wolf asked that Riverport schedule an arbitration. *Id.* Riverport refused. *Id.*

About a year later, Wolf resolved a claim with her own automobile insurance company. *Id.* at ¶ 12. That insurer paid her $150,000. *Id.*

At that point, Wolf had received $250,000 from the two carriers. But Wolf had received nothing from Riverport, the insurance company for the YMCA.

Almost four years after Wolf filed her underinsured motorist benefits claim, Riverport finally agreed to arbitration. *Id.* at ¶ 13. It didn't go well for Riverport. The arbitration panel awarded Wolf a grand total of $905,000. *Id.* at ¶ 14.

Riverport didn't tender a check for $905,000. Instead, Riverport sent Wolf a check for $655,000. Riverport subtracted the two other insurance payments (totaling $250,000) from the $905,000, and landed at a total of $655,000.

Wolf responded by suing Riverport in the Circuit Court of Cook County. *See* Cplt. (Dckt. No. 1-1). Riverport, in turn, removed the case to federal court. *See* Notice of Removal (Dckt. No. 1).

The complaint included two counts. The first count was a breach-of-contract claim. *See* Cplt., at ¶¶ 14–17 (Dckt. No. 1-1). Wolf claimed that Riverport should not have subtracted the

3

two payments from the other insurers totaling $250,000. Wolf alleged that those payments were not offsets under the policy, and that Riverport should have paid the full $905,000. *Id.* at ¶ 9.

The second count was a claim under section 155 of the Illinois Insurance Code. *Id.* at ¶¶ 18–21. Wolf alleged that Riverport vexatiously and unreasonably delayed the payment of her claim. *Id.* at ¶ 20.

The breach-of-contract claim soon fell by the wayside. The parties appeared at a status hearing before Judge Lee (this Court's predecessor, before reassignment). *See* 3/11/21 Order (Dckt. No. 10). Wolf made an oral motion to dismiss the breach-of-contract claim (Count I). *Id.* Judge Lee granted the motion. *Id.* At that point, the claim under section 155 of the Illinois Insurance Code was the only remaining claim.

The dismissal of the breach-of-contract claim created a major obstacle for the claim under the Illinois Insurance Code. "[W]here no benefits are owed under the terms of an insurance policy, a claim of bad-faith denial under 215 ILCS 5/155 necessarily fails." *See Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021). A claim under section 155 is a caboose. On its own, section 155 cannot be the engine for a recovery.

Riverport filed a motion for judgment on the pleadings. *See* 1/21/22 Mtn. for Judgment on the Pleadings (Dckt. No. 32). Riverport argued that a plaintiff cannot bring a standalone claim under section 155, untethered to a claim under an insurance policy. *See* 1/21/22 Def.'s Mem., at 2 (Dckt. No. 33).

Judge Lee struck the motion without prejudice in light of the then-pending reassignment of the case. *See* 9/8/22 Order (Dckt. No. 50). After reassignment, Riverport filed another motion for judgment on the pleadings. *See* 10/6/22 Mtn. for Judgment on the Pleadings (Dckt. No. 54).

4

Wolf responded by filing a motion to amend the complaint, which this Court granted. *See* 10/6/22 Mtn. to Amend (Dckt. No. 56). So Riverport's motion for judgment on the pleadings became moot. *See* 10/11/22 Order (Dckt. No. 59).

Wolf then filed an amended complaint with only one count. *See* Am. Cplt. (Dckt. No. 60). Wolf labeled it a breach-of-contract claim (but labels don't count for much). *Id.* at ¶¶ 14–17. Putting aside the label, the allegations underlying her "breach of contract" header focused on section 155 of the Illinois Insurance Code. *Id.* In reality, the claim was a statutory claim covered in breach-of-contract wrapping paper.

Riverport filed yet another motion for judgment on the pleadings. *See* 10/24/22 Mtn. for Judgment on the Pleadings (Dckt. No. 62). Riverport pointed to the substance of the claim, not its label. And in substance, the claim was a claim under section 155. *See* 10/24/22 Def.'s Mem., at 2 (Dckt. No. 63).

This Court granted Riverport's motion for judgment on the pleadings. *See* 4/20/23 Order, at 11 (Dckt. No. 73). This Court explained that a section 155 claim cannot stand alone. *Id.* at 9.

"[S]ection 155 presupposes an action on the insurance policy." *See Kroutil v. State Farm Mut. Auto. Ins. Co.*, 195 N.E.3d 376, 381 (Ill. App. Ct. 2021) (citing *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 902 (Ill. 1996)). "[T]hus, for a plaintiff to recover under section 155, the plaintiff must also succeed in the action on the policy." *Id.* (citing *Hoover v. Country Mut. Ins. Co.*, 975 N.E.2d 638, 647 (Ill. App. Ct. 2012)); *see also Bridger v. Amguard Ins. Co.*, 2023 WL 2456115, at *2 (S.D. Ill. 2023) ("Under Illinois law, a section 155 claim is dependent on a successful breach of contract action."). You can't have a claim about a bad-faith breach without a *breach*.

This Court also rejected Wolf's attempt to save the complaint by invoking the implied covenant of good faith and fair dealing. *See* 4/20/23 Order, at 5–11 (Dckt. No. 73). A claim about the implied covenant of good faith requires a contractual foothold, meaning a provision in the contract that creates discretion and gives rise to the duty. Here, Wolf failed to point to any language in the policy that could give rise to the duty of good faith. And without a breach-of-contract claim, Wolf had no claim under section 155.

The Court granted Riverport's motion for judgment on the pleadings. *Id.* at 11. But the Court gave Wolf one more chance to amend the complaint and allege a breach under the policy. *Id.*

Wolf accepted the invitation and filed a second amended complaint. *See* Second Am. Cplt. (Dckt. No. 74). Once again, Wolf's second amended complaint included only a breach-of-contract claim. *Id.* at ¶¶ 16–25.

Wolf attempted to plug the holes by pointing to two provisions in the policy. In her view, each of the provisions vested Riverport with discretion, and gave rise to the implied covenant of good faith and fair dealing.

First, Wolf pointed to language in the policy's Commercial General Liability Coverage Form that gave Riverport discretion to "investigate any occurrence and settle any claim or suit[.]" *See* Second Am. Cplt., at ¶ 18 (Dckt. No. 74) (cleaned up) (citing Insurance Policy – Commercial General Liability Coverage Form, § I.1(a), at 21 of 230 (Dckt. No. 74-1)).

Second, Wolf relied on language in the policy's Business Auto Coverage Form that gave Riverport discretion to "investigate and settle any claim or suit as it considers appropriate." *Id.* at ¶ 19 (cleaned up) (citing Insurance Policy – Business Auto Coverage Form, § II.A, at 145 of 230 (Dckt. No. 74-1)).

6

Based on those provisions, Wolf alleged that Riverport did not act in good faith when it exercised "its discretion in the investigation and settlement of" her claim. *Id.* at ¶ 23. As she sees things, the policy gave Riverport the discretion to settle cases, and Riverport breached that duty by dragging its feet when resolving her underinsured motorist claim.

The second amended complaint puts a "breach-of-contract" label on the claim. But Wolf did not abandon section 155 of the Illinois Insurance Code. Quite the opposite. Wolf seeks all available remedies under section 155 of the Illinois Insurance Code because Riverport allegedly "breached its duty to exercise its discretion provided by the insurance policy to investigate and settle claims." *Id.* at ¶ 25. She seeks attorneys' fees and statutory damages.

By the look of things, Wolf is attempting to find a basis to bring a breach-of-contract claim so that she can recover attorneys' fees under section 155. Wolf is attempting to shoehorn section 155 back into the case by finding a breach-of-contract foothold.

Riverport responded by filing another motion for judgment on the pleadings. *See* 10/30/23 Mtn. for Judgment on the Pleadings (Dckt. No. 87).

## Legal Standard

Before diving into the merits, the Court starts with the applicable legal standard. That task, it seems, requires a little more work than usual. The enunciation of the standard for a motion for judgment on the pleadings seems ripe for the judicial equivalent of a software update.

Start with first principles. The standard for a motion for judgment on the pleadings is the same as the standard for a motion to dismiss for failure to state a claim. *See, e.g.*, *Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 994–95 (7th Cir. 2023) ("We review the district court's decision to enter judgment on the pleadings de novo. In doing so, we apply the same standard that we reference in reviewing a decision to grant a Rule 12(b)(6) motion to

7

dismiss for failure to state a claim for relief.") (internal citations omitted); *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) ("The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same."). So far, so good.

The Supreme Court updated and modernized the standard for motions to dismiss in *Twombly* and *Iqbal*. Up to that point, courts continued to use the antiquated "no set of facts" standard from *Conley*, which had sparked confusion. Under that standard, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

In *Twombly*, the Supreme Court put *Conley*'s "no set of facts" standard out to pasture. "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

Since then, when addressing motions to dismiss, the Seventh Circuit has recognized that the Supreme Court abandoned the "beyond doubt" and "no set of facts" standard. "The old formula – that the complaint must not be dismissed unless it is beyond doubt without merit – was discarded by the *Bell Atlantic* decision." *See Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). And again: "In *Bell Atlantic*, the Supreme Court retooled federal pleading standards, retiring the oft-quoted *Conley* formulation that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

8

no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Conley*).

      Courts of Appeals widely recognize that the "beyond doubt" standard has gone extinct. It is dead, buried, and pushing up the daisies. *See, e.g.*, *Thomas v. Rhode Island*, 542 F.3d 944, 948 n.4 (1st Cir. 2008) ("The motion to dismiss standard cited by appellants – a complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts' that entitles him to relief – was set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). That standard no longer governs in light of *Twombly*."); *EEOC v. Port Authority of NY & NJ*, 768 F.3d 247, 253 (2d Cir. 2014) ("*Conley v. Gibson* . . . instructs that a complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' That standard was abandoned by the Court's later rulings in *Twombly* and *Iqbal*[.]") (internal citation omitted); *Modular Steel Sys. Inc. v. Westfield Ins.*, 2022 WL 832048, at *2 n.4 (3d. Cir. 2022); *Flynn v. CIT Grp.*, 294 F. App'x 152, 154 (5th Cir. 2008); *Casden v. Burns*, 306 F. App'x 966, 973 n.5 (6th Cir. 2009); *Dalcour v. City of Lakewood*, 492 F. App'x 924, 930 n.9 (10th Cir. 2012); *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010).

      That said, the "beyond doubt" standard appears to live beyond the grave, in the context of a motion for judgment on the pleadings. All too often, cases bring the "beyond doubt" standard back to life, and it rears its ugly head.

      Case law from the Seventh Circuit includes more than a few examples of cases that apply the "beyond doubt" standard to a motion for judgment on the pleadings. Here's a good example: "We therefore take the facts alleged in the pleadings in the light most favorable to the nonmoving party, and we will sustain the entry of judgment only if it is *beyond doubt* that the

nonmoving party cannot prove facts sufficient to support its position and that the movant is entitled to relief." *See Citizens Ins. Co. of Am.*, 70 F.4th at 994 (emphasis added); *see also Scottsdale Ins. Co. v. Columbia Ins. Grp.*, 972 F.3d 915, 919 (7th Cir. 2020) ("When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears *beyond doubt* that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief.") (emphasis added); *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016) ("We review a judgment on the pleadings de novo, using the same standard that applies to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Thus, we view the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears *beyond doubt* that Landmark cannot prove any facts that would support its claim for relief.") (emphasis added) (cleaned up).

Notice the internal tension. The standard for a motion to dismiss is the same as the standard for a motion for judgment on the pleadings. (That's true.) And the "beyond doubt" standard no longer applies to motions to dismiss. (That's true too.) Putting those principles together, the "beyond doubt" standard shouldn't apply to a motion for judgment on the pleadings, either. But someway somehow, the "beyond doubt" standard springs back into existence when it comes to motions for judgment on the pleadings.

A leading treatise recognizes that the "beyond doubt" standard no longer applies to motions for judgment on the pleadings. *See* 5C Charles Alan Wright *et al.*, Federal Practice and Procedure § 1368 (3d ed. 2024) ("Prior to the *Twombly* decision in 2007, that standard permitted district courts to dismiss the complaint only if it appeared beyond doubt that the plaintiff could not prove any set of facts that would entitle him or her to relief under the governing substantive law. However, the 'no set of facts' language from *Conley v. Gibson* was 'retire[d]' by the

10

Supreme Court in 2007 in *Bell Atlantic Corporation v. Twombly*. . . . Although this decision was rendered in the antitrust context, courts have been applying its instructions to Rule 12(c) motions when using the same standard as that applied for Rule 12(b)(6) motions."); *see also* 2 James Wm. Moore *et al.*, Moore's Federal Practice §12.38 (3d ed. 2022) ("As with the Rule 12(b)(6) motion, under Rule 12(c) the court must accept the nonmovant's allegations as true; viewing the facts 'in the light most favorable to the nonmoving party.' . . . A complaint survives a motion for judgment on the pleadings if it contains sufficient factual matter, accepted as true, to state a claim to relief that is 'plausible on its face.' . . . [J]udgment on the pleadings is governed by the same standards as dismissal for failure to state a claim[.]") (citations omitted); *Ruebe v. PartnerRe Ireland Ins. DAC*, 470 F. Supp. 3d 829, 842 n.2 (N.D. Ill. 2020) ("[T]he any-set-of-facts language persists in the case law about motions for judgment on the pleadings, even though *Twombly* tightened the language for motions to dismiss. Perhaps the language in the context of a motion for judgment on the pleadings could use comparable tightening.").

    Maybe string cite inertia is the reason why the cases continue to cite the "beyond doubt" standard. The old standard was embedded in the genetic code of the case law, and it has proven difficult to eradicate. At some point, enough cases say the same thing, and it creates momentum that perpetuates itself. The "beyond doubt" standard seems like a living fossil in the case law, the judicial equivalent of a coelacanth.

    *Conley* earned its retirement. But by the look of things, *Conley* has found a second career in the context of a motion for judgment on the pleadings. The "beyond doubt" standard hasn't completely disappeared from the judicial bloodline.

    The ghost of *Conley* lives on. One has to wonder if the case law is ripe for an update, if not a second extinction event. Maybe it is time to exorcise the ghost of *Conley* once and for all.

11

**Analysis**

The question at hand is whether the second amended complaint states a claim that Riverport breached the terms of the insurance policy. Without a contract claim, a claim under section 155 doesn't have a leg to stand on.

Time and again, Illinois courts have recognized that section 155 of the Illinois Insurance Code does not authorize a freestanding claim untethered to the language of the insurance policy. Section 155 "provides an extracontractual remedy to an action on a policy," and "presupposes an action on a policy." *See Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 902 (Ill. 1996).

Section 155 "does not create an independent tort for which an insurance company can be held liable." *See Moles v. Illinois Farmers Ins. Co.*, 229 N.E.3d 856, 862 (Ill. App. Ct. 2023). To recover under section 155, an insured "must also succeed in the action on the policy." *See Hoover v. Cnty. Mut. Ins. Co.*, 975 N.E.2d 638, 647 (Ill. App. Ct. 2012).

A claim under section 155 cannot survive on its own. An insured needs to prevail on a claim under the policy to have a tag-along claim under section 155. That is, section 155 creates an extracontractual remedy for an insured who prevails on a contractual claim under the policy. It's an extracontractual claim on top of a contractual claim.

Section 155 is the cherry on top. It's not the sundae. And without the sundae, a claim under section 155 has nowhere to go.

The question, then, is whether the second amended complaint alleges a breach-of-contract claim under the policy. For the second time, Wolf invokes the implied covenant of good faith. This Court covered that terrain in the last go-around. *See* 4/20/23 Order, at 5–11 (Dckt. No. 73).

The implied covenant of good faith and fair dealing is a rule of construction. *See In re Kmart Corp.*, 434 F.3d 536, 542 (7th Cir. 2006). The implied covenant of good faith and fair dealing is a lens for interpreting language in a contract.

The duty of good faith springs to life "when a party exercises discretion under a contract in a manner that was unexpected." *See* 4/20/23 Order, at 7 (Dckt. No. 73) (cleaned up). The implied covenant of good faith and fair dealing is not a free-floating obligation untethered to the text of the contract.

To allege a breach-of-contract claim based on the implied covenant of good faith, a party must show that the contract vested the opposing party with discretion, and that the opposing party exercised that discretion in bad faith. "The implied covenant of good faith and fair dealing applies when a party exercises discretion under a contract in a manner that was unexpected." *Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 555 (N.D. Ill. 2022).

In other words, "to plead a breach of the covenant of good faith and fair dealing, a plaintiff must plead the existence of contractual discretion." *See* 4/20/23 Order, at 8 (Dckt. No. 73) (cleaned up). "Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Eckhardt v. Idea Factory, LLC*, 193 N.E.3d 182, 194 (Ill. App. Ct. 2021) (quoting *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 916 (Ill. App. Ct. 2004)). "This principle ensures that parties do not try to take advantage of each other in a way that could not have been contemplated

13

at the time the contract was drafted or to do anything that will destroy the other party's right to receive the benefit of the contract." *Cramer*, 675 N.E.2d at 903.

The lingo sounds similar, but a claim about the implied covenant of good faith is not the same thing as a claim for the bad faith denial of a claim under section 155. "The implied covenant of good faith is about abusing discretion under a contract. A bad faith claim about insurance coverage is about dragging one's feet to pay a claim for no legitimate reason." *See* 4/20/23 Order, at 10 (Dckt. No. 73).

To bring a claim under section 155, an insured needs to allege a breach of a duty under the policy. "The bottom line is that there must be an underlying breach of contract (meaning a breach of the policy) before bringing a claim for the bad faith denial of coverage. It can be – but doesn't *have* to be – a breach of contract based on the implied covenant of good faith and fair dealing." *Id.* (emphasis in original).

Wolf alleges that Riverport "breached its duty to exercise its discretion provided by the insurance policy to investigate and settle claims." *See* Second Am. Cplt., at ¶ 25 (Dckt. No. 74).

Wolf points to two provisions that, in her view, gave Riverport the discretion to settle claims. *Id.* at ¶ 17. She alleges that Riverport breached those provisions by failing to settle her claims in good faith. Neither provision lends a hand.

The first provision appears in a section of the Business Auto Coverage Form, called "Covered Autos Liability Coverage." *See* Insurance Policy – Business Auto Coverage Form, § II.A, at 145 of 230 (Dckt. No. 74-1).

Roughly speaking, that section provides coverage if a YMCA employee must pay damages from a car crash that results in bodily injury or property damage. The policy reads as follows: "[Riverport] will pay all sums an 'insured' legally must pay as damages because of

14

'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" *Id.*

The provision gives Riverport the "right and duty to defend any 'insured' against a 'suit' asking for such damages[.]" *Id.* And it gives Riverport the power to settle claims against the insured. Riverport "may investigate and settle any claim or 'suit' as [it] consider[s] appropriate." *Id.*; *see also* 11/20/23 Pl.'s Resp., at 3 (Dckt. No. 89).

The second provision appears in the Commercial General Liability Coverage Form. The gist is the same. That provision gives Riverport the discretion to settle claims against the insured. "We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result." *See* Insurance Policy – Commercial General Liability Coverage Form, § I.1(a), at 21 of 230 (Dckt. No. 74-1).

But once again, that provision applies to claims *against* the insured. The beginning of the paragraph cements the point: "We will pay those sums *that the insured becomes legally obligated to pay* as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id.* (emphasis added).

Taken together, those provisions give Riverport the power and the discretion to settle claims brought against an insured. That right makes perfect sense. After all, the insurance company is footing the bill, so the insurance company has the power to settle the tab.

Those provisions do not come into play here. Wolf wasn't involved in a case *against* her. Instead, Wolf was involved in a case brought *by* her. No one was seeking damages from Wolf. Wolf was seeking damages from someone else.

Those provisions apply if the insured was on defense. But here, Wolf was on offense.

15

Simply put, this case doesn't involve a situation where the insurance company dragged its feet in resolving a claim *against* the insured. The case at hand involves an insured who brought a claim against the insurer.

That's why Wolf did not bring a claim under the Business Auto Coverage Form. Instead, Wolf filed a claim under the Underinsured Motorists Coverage Endorsement. *See* Second Am. Cplt., at ¶ 6 (Dckt. No. 74) ("[W]olf . . . initiat[ed] an underinsured motorist benefits claim under the policy."); *see also* Insurance Policy – Underinsured Motorists Coverage Endorsement, at 190 of 230 (Dckt. No. 74-1).

An endorsement is "part of" the insurance contract. *See* 2 Couch on Insurance § 21:21 (3d ed. 2023). If an "endorsement modifies, qualifies, or restricts the terms of the original policy," the endorsement "controls." *Id.* at § 21:22.

The Underinsured Motorists Coverage Endorsement modified the Business Auto Coverage Form. *See* Insurance Policy – Underinsured Motorists Coverage Endorsement, at 190 of 230 (Dckt. No. 74-1) ("[T]his endorsement modifies insurance provided under . . . BUSINESS AUTO COVERAGE FORM.").

Indeed, the endorsement has its own "coverage" section. In essence, it states that Riverport will pay if a YMCA employee "is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle.'" *Id.* at § A.1, at 190 of 230.

The section goes on to explain when Riverport will pay. *Id.* Notably, the section does not have a provision about settling claims like the ones that appear in the "coverage" section of the Business Auto Coverage Form or the Commercial General Liability Coverage Form. It does not have language about Riverport's discretion to settle claims brought against Riverport.

16

The bottom line is that the second amended complaint does not state a claim for breach of contract. The second amended complaint does not allege that Riverport breached a provision of the policy that vested the company with discretion.

Overall, Wolf did point to a few provisions that give Riverport the power to settle claims. But that discretion comes into play when Riverport settles claims brought *against* its insured, not claims brought *by* its insured. That's not this case.

Lurking in the background is section 155. By the look of things, Wolf wants to bring a claim under section 155, and is trying to find a contractual hook to do so. The second amended complaint stretches to find a few provisions in the policy in the hope of characterizing the claim as a breach-of-contract claim. But in reality, the claim is a section 155 claim, with breach-of-contract lipstick.

The second amended complaint is dressed up as a breach-of-contract claim, but the complaint does not state a claim for breach of contract. And without a breach-of-contract claim, there is no basis for obtaining relief under section 155, either.

## Conclusion

For the reasons stated above, Riverport's motion for judgment on the pleadings is hereby granted.

Date: May 21, 2024

Steven C. Seeger
United States District Judge